UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

James Pierce,
     Plaintiff

     v.                                    Civil No.06-cv-422-SM
                                           Opinion No. 2008 DNH 016
Hillsborough County
Department of Corrections;
Michael Bernier, individually;
Angela Boyer, individually;
Carl Brown, individually;
Ferdinand Cruz, individually;
Todd Gordon, individually;
John Kowack, individually;
Al Pucci, individually;
and John Sullivan, individually,
     Defendants


**O R D E R**


     In Count I of this suit, brought pursuant to 42 U.S.C. §
1983, James Pierce claims that while he was serving a sentence at
the Hillsborough County House of Corrections, his rights under
the Eighth and Fourteenth Amendments were violated during four
incidents in which various correctional officers allegedly used
excessive force against him.  Count II is a state law claim for
negligent supervision against the Hillsborough County Department
of Corrections.  Before the court is a partial motion to dismiss
for failure to meet the exhaustion requirement of the Prisoner
Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  Plaintiff
concedes that he has not exhausted the administrative remedies

available to him for resolving claims arising out of two of the four incidents listed in his complaint, but otherwise objects to dismissal. For the reasons given, defendants' motion to dismiss is granted in part and denied in part.

## The Legal Standard

While defendants have filed a motion to dismiss, both parties present matters outside the pleadings. Accordingly, defendants' filing shall be treated as a motion for summary judgment. See FED. R. CIV. P. 12(d); see also Scott v. Gardner, 287 F. Supp. 2d 477, 485 (S.D.N.Y. 2003) ("If nonexhaustion is not clear from the face of the complaint, a defendant's motion should be converted, pursuant to Rule 12(b), to one for summary judgment limited to the narrow issue of exhaustion . . . ."); Collins v. Goord, 438 F. Supp. 2d 399, 412 (S.D.N.Y. 2006) ("district courts have converted motions to dismiss to summary judgment without notice to determine exhaustion in PLRA cases where, as here, both parties submitted materials outside the pleadings and it is apparent that the plaintiff will not be taken by surprise by such conversion").

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party

is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "The object of summary judgment is to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Dávila v. Corporación de P.R. para la Diffusión Pública, 498 F.3d 9, 12 (1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 7 (1st Cir. 2004)). When ruling on a party's motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. See Torres-Negron v. Merck & Co., 488 F.3d 34, 39 (1st Cir. 2007) (citing Rodríguez v. SmithKline Beecham, 224 F.3d 1, 5 (1st Cir. 2000)).

**Background**

At all times relevant to this action, James Pierce was serving a sentence in the Hillsborough County House of Corrections ("HC HOC"). The Hillsborough County Department of Corrections ("HC DOC") has a grievance procedure, which provides:

> If you have a grievance concerning any matter relating to your confinement, a grievance procedure is available to you. The first step of the grievance procedure is an informal resolution. You must make a genuine attempt to seek an informal resolution of your problem with the staff member concerned. The second step will normally be done in the Request Form format. Fill out an Inmate Request Form stating your problem and suggested remedy, and submit it to your Unit Officer.

>  All request forms will be answered within seven (7)
>  working days of receipt.
>
>  If you are dissatisfied with the response to your
>  Request Form, you may file an Inmate Grievance Form to
>  a Captain or his designee, within 48 hours of receipt
>  of your Request Form response.  The Captain or his
>  designee has 15 working days from receipt to review
>  your grievance and reply. . . .

(Defs.' Mot. to Dismiss, Ex. 2, at 13-14.)  The front side of the HC DOC Inmate Grievance Form directs those filing grievances to provide a "[b]rief description of [the] grievance (includ[ing] where and when)."  (Pl.'s Obj., Ex. 1.)  The instructions for completing the grievance form state:

>  1.  Fill in date sent.
>  2.  Fill in your name.
>  3.  Fill in your CCN.
>  4.  Fill in your housing unit.
>  5.  Briefly describe your grievance.  Include date and
>      time.  Provide enough information so that the
>      recipient can understand your problem. . . .
>  6.  Grievance[s] sent to the Superintendent from
>      an inmate without evidence of a Captain's
>      earlier action will be returned without
>      action.

(Defs.' Reply, Ex. 1.)

In his complaint, plaintiff identifies four incidents in which he alleges that correctional officers used excessive force when moving him from one part of the facility to another. Regarding the two incidents that remain a part of plaintiff's

4

federal claim, he asserts that: (1) on November 14, 2003, Sgt. Angela Boyer kicked and punched him after putting him in handcuffs and shackles, and placed excessive stress upon his hands and wrists while transporting him (First Am. Compl. ¶ 21); and (2) on December 1, while he was being transported from the medical unit by Lt. John Sullivan, correctional officer Al Pucci, and others, "Pucci violently pushed [his] face against the cell wall, then Pucci and Sullivan slammed [his] body against the wall and/or floor, and throughout the transport otherwise beat and kicked [him]" (id. ¶¶ 24-25).

Between November 14 and the end of his incarceration at the HC HOC, plaintiff filed a total of seven grievances, three of which raised claims of excessive force. (Defs.' Mot. to Dismiss, Ex. 1(O'Mara Aff.) ¶¶ 5-6.) In one of those grievances, plaintiff alleged:

> This grievance is being filed against Lt. Sullivan for the ordering of my assault with excessive force that took place on the medical unit 1C where I had been recovering from a serious abdominal surgery in August 2003. This is the second time Lt. Sullivan has ordered physical harm to myself. The first time was about a month ago when he cleared FTO Gordon to "shoot me" if I gave him a hard time at a doctor's appointment. The second time was on 12/1/03 when he ordered his officers into my cell [where] I had been sleeping.

(Pl.'s Obj., Ex. 1, at 1 ("Sullivan grievance").)  In a second grievance, plaintiff alleged:

> This grievance is against Sgt. Boyer for her part in my assault with the use of excessive force causing physical bodily harm.  Sgt. Boyer has been harassing me for several months now causing me to receive several disciplinary reports and the loss of 3 months good [time].  I've shown a clear pattern of harassment to the superiors over her but nothing has been done regarding her retaliation towards me for calling her a lesbian, which she is.  She was angry on 12/1/03 to see that I was back on the medical unit 1C and at 1 or 2 days she was trying to figure a way to get me back in the hole on 2B.  Her and Lt. Sullivan are both responsible for what happened to me on the medical unit on 12/1/03.

(Id. at 2 ("Boyer grievance").)  And in a third grievance, plaintiff alleged:

> I am filing this grievance against CO Knight[ ] for assault and the use of excessive force to my body on 12/1/03.  I am still recovering from a serious abdominal operation this past August 2003.  I should of never been dragged and removed from the medical unit 1C the way I was on 12/1/03.  I have a shoulder that I can barely move and I am bruised all over my arms and back.  CO Knight[ ] also broke my left arm for [the] reason only that Sgt. Boyer ordered him and Correctional Officers to assault me with excessive force on 12/1/03.  This incident should of never happened to me.

(Id. at 3 ("Knight grievance").)  All three grievances received responses in due course from the Captain and the Superintendent.  (Id. at 1-3.)

**Discussion**

According to defendants, Count I properly consists of only a constitutional claim against Sgt. Sullivan, based upon the December 1 incident. In their view: (1) plaintiff has no claim based upon the November 14 incident because he has not exhausted his administrative remedies regarding any claim arising from that incident; (2) he has no claim against Officer Pucci based upon the December 1 incident because he has not exhausted his administrative remedies regarding any conduct by Pucci; and (3) he has no claim against Sgt. Boyer based upon the December 1 incident because there are no factual allegations in his complaint to support any such claim. Plaintiff counters that: (1) the three inmate grievance forms quoted above demonstrate exhaustion of administrative remedies relative to the November 14 incident; (2) he should not be penalized for his inability to identify Pucci at the time he filed his grievances, and his reference to Sullivan, Boyer, and "others" was sufficient to state a grievance based upon Pucci's conduct, and thus exhaust his administrative remedies relative to Pucci's conduct on December 1; and (3) his omission of Boyer from the factual allegations in his complaint concerning the December 1 incident was a clerical error causing defendants no prejudice. In their reply to plaintiff's objection, defendants also argue that

plaintiff's entire federal claim should be dismissed because he has not demonstrated that he engaged in either of the first two steps of the HD DOC grievance process, i.e., seeking an informal resolution and filing an inmate request form.

Under the exhaustion provision of the Prison Litigation Reform Act:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). "[F]ailure to exhaust is an affirmative defense under the PLRA." Jones v. Bock, 127 S. Ct. 910, 921 (2007). A defendant who demonstrates lack of exhaustion is entitled to dismissal of the unexhausted claims in the plaintiff's complaint. See Medina-Claudio v. Rodríquez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); see also Jones, 127 S. Ct. at 923–26 (rejecting the Sixth Circuit's "total exhaustion" rule which called for dismissal of entire complaint containing exhausted and unexhausted claims).

The United States Supreme Court has "identified the benefits of exhaustion to include allowing a prison to address complaints

8

about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Jones, 127 S. Ct. at 923 (citing Woodford v. Ngo, 126 S. Ct. 2378, 2385 (2006); Porter v. Nussle, 534 U.S. 523, 524-25 (2002)).  To produce the first of those benefits, an inmate's internal grievance "must provide enough information about the conduct [at issue] to allow prison officials to take appropriate responsive measures." Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004).

> So long as the prisoner's grievance "present[s] the relevant factual circumstances giving rise to a potential claim . . . sufficient under the circumstances to put the prison on notice of potential claims and to fulfill the basic purposes of the exhaustion requirement . . . . [T]here does not appear to be any reason to require a prisoner to present fully developed legal and factual claims at the administrative level."

Sulton v. Wright, 265 F. Supp. 2d 292, 298 (S.D.N.Y. 2003) (quoting Irvin v. Zamora, 161 F. Supp. 2d 1125, 1134-35 (S.D. Cal. 2001); citing Lewis v. Washington, 197 F.R.D. 611, 614 (N.D. Ill. 2000)).

A. Exhaustion of Remedies Regarding the November 14 Incident

Plaintiff has not exhausted the administrative remedies available to him for resolving claims arising from the November 14 incident. His three grievance forms raising claims of excessive force specifically identified the December 1 incident as the matter being grieved. None of them included any complaints about an incident on November 14.[1] While the Boyer grievance also mentioned plaintiff's ongoing problems with Boyer, who is the single officer identified in plaintiff's complaint as having used excessive force on November 14, that oblique reference to past difficulties with Sgt. Boyer came nowhere close to informing jail officials that plaintiff was seeking redress for any incident other than the one that allegedly took place on December 1. See Sulton, 265 F. Supp. 2d at 298. Accordingly, defendants are entitled to dismissal of Count I as it relates to the November 14 incident.

---

[1] The Sullivan grievance did mention an incident involving Lt. Sullivan and FTO Gordon that had taken place "about a month ago," i.e., in mid November. But the Sullivan grievance cannot reasonably be read as complaining about that prior incident. Moreover, because the Sullivan grievance described the mid-November incident as one in which Sullivan gave orders to Gordon regarding plaintiff's treatment during a doctor's appointment, that reference cannot reasonably be read as a complaint about the manner in which Sgt. Boyer moved plaintiff from the medical unit to another part of the jail on November 14, which is the sole factual allegation in the complaint concerning the November 14 incident.

B. Exhaustion of Remedies Regarding Officer Pucci's Conduct

Whether plaintiff has exhausted his administrative remedies concerning Officer Pucci's alleged conduct on December 1 is a closer question. It is undisputed that plaintiff complained about the December 1 incident in three separate grievance forms. However, none of those three grievances accused defendant Pucci of any wrongdoing, or even mentioned his name in passing. Moreover, notwithstanding plaintiff's suggestion to the contrary, none of the three grievances even colorably referred to any acts actually undertaken by "other" correctional officers that plaintiff was unable to identify at the time he filed his grievances, although two of them do mention other officers being ordered to enter his cell and assault him. Thus, there is a certain logic to the argument that plaintiff never exhausted his administrative remedies relative to Pucci's treatment of him.

Indeed, until recently, there was persuasive judicial authority for the proposition that "for a court to find that a prisoner has administratively exhausted a claim against a particular defendant, [that] prisoner must have alleged mistreatment or misconduct on the part of the defendant at [the first step] of the grievance process." Burton v. Jones, 321 F.3d 569, 575 (6th Cir. 2003). Under the rule of Burton, Pucci would

11

be entitled to have the claim against him dismissed for lack of exhaustion.

But the Supreme Court abrogated Burton in Jones v. Bock. After determining that a Sixth Circuit rule requiring dismissal of claims against prison officials who were not expressly named in a prisoner plaintiff's underlying internal grievance "lack[ed] a textual basis in the PLRA," 127 S. Ct. at 922, the Court held that "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances," id. at 923. In so holding, the Court explained:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

Id. at 922-23.

Here, as in Jones, the relevant grievance procedure "does not require a prisoner to identify a particular responsible party," 127 S. Ct. at 922. Rather, the only information the grievance form requires is date, time, and location. Thus,

plaintiff's failure to name Pucci in any of his grievances is not fatal to his claim against Pucci in this case.

Moreover, the Knight grievance alleged that "Sgt. Boyer ordered [CO Knight] and [other] Correctional Officers to assault [him] with excessive force," and the Sullivan grievance alleged that Lt. Sullivan "ordered his officers into [plaintiff's] cell where [he] had been sleeping." Those references to officers other than Knight, Boyer, and Sullivan provided HC HOC officials with sufficient notice and ample information to investigate the December 1 incident, including the actions of any unnamed correctional officers who may have participated in it. (Staffing records at the House of Corrections are quite detailed with regard to which officers are working which units at particular times.)

In terms of the requirements stated on the HC DOC Inmate Grievance Form, plaintiff's concededly brief descriptions provided enough information to allow jail officials to understand that the problem plaintiff was complaining about was the December 1 incident, including the conduct of any HC HOC officers who may have been involved. Accordingly, Officer Pucci is not entitled to dismissal of the claim against him on exhaustion grounds. Cf.

Collins, 438 F. Supp. 2d at 412 (ruling that inmate plaintiff had exhausted administrative remedies against three employees of prison library not specifically named in filings generally grieving library's failure to provide him with certain materials to which he claimed to have been entitled).

C. Dismissal of Plaintiff's Entire Federal Claim

Defendants also argue that plaintiff's federal claim should be dismissed in its entirety because "[p]laintiff has not shown satisfaction of the first two steps of the HCDOC 'grievance' procedure." Defendants are mistaken.

Plaintiff has no obligation to demonstrate exhaustion; "failure to exhaust is an affirmative defense," Jones, 127 S. Ct. at 921, which, of course, places the burden of proof on defendants.[2] Defendants' proof consists solely of an assertion that plaintiff has not shown that he attempted informal

---

[2] Defendants' apparent misapprehension of the burden of proof on failure to exhaust may stem from their reliance upon language in Swimp v. Metrish, No. 2:06-CV-44, 2007 WL 763179 (W.D. Mich. March 9, 2007), that was included in the Magistrate Judge's Report and Recommendation in that case, id. at *4, but stricken by the District Judge's order adopting the Report and Recommendation, id. at *1, in light of the Supreme Court's decision in Jones. Similarly, defendants misread Peterson v. Roe, No. 05-cv-055-PB, 2007 WL 432962 (D.N.H. Feb. 2, 2007), which they mischaracterize in their reply brief.

resolutions or submitted inmate request forms before submitting the Sullivan, Boyer, and Knight grievances. That is hardly enough. Moreover, the record in this case demonstrates that HC HOC officials accepted, processed, and responded to the Sullivan, Boyer, and Knight grievances, which suggests that defendants regarded those grievances as procedurally sound at the time they were filed.[3] Acceptance and processing of the Sullivan, Knight and Boyer grievances distinguishes this case from Swimp v. Metrish, No. 2:06-CV-44, 2007 WL 763179 (W.D. Mich. March 9, 2007), on which defendants rely. In Swimp, dismissal for failure to exhaust was based upon a record demonstrating that: (1) the plaintiff initially filed a step-three grievance, 2007 WL 763179, at *5; (2) prison officials returned that grievance and told the plaintiff that he was required to start at step one, id.; and (3) the plaintiff never pursued the grievance process all the way from step one to step three and, in fact, "concede[d] that his second attempt at filing a step III grievance may never have been filed," id. at *1. In short, defendants' argument that

---

[3] That conclusion is buttressed by the fact that the instructions for completing the Inmate Grievance Form expressly provide that in at least some circumstances, a procedurally defective grievance will be returned without action. The court also notes that Superintendent O'Mara has testified that the issuance of grievance forms is strictly regulated (O'Mara Aff. ¶ 4), which suggests that a grievance form would generally not be issued to an inmate who had not satisfied the procedural prerequisites for filing a grievance.

plaintiff's entire federal claim should be dismissed for failure to exhaust is unavailing.

D. Sgt. Boyer and the December 1 Incident

Plaintiff has not stated a claim against Sgt. Boyer regarding her participation in the December 1 incident. The only correctional officers mentioned in the complaint as having any role in the December 1 incident are Lt. Sullivan and Officer Pucci. The only mention of Boyer is in connection with the November 14 incident. Boyer's omission from the complaint may be the result of a clerical error, as plaintiff contends, but the fact remains that the complaint, as drafted, contains no facts which, if proven, would subject Boyer to liability for the December 1 incident.

## Conclusion

For the reasons given, defendants' motion to dismiss (document no. 19) is granted in part and denied in part. In light of plaintiff's concessions concerning two of the four incidents mentioned in his complaint, and the foregoing discussion, this case now consists of: (1) a PLRA claim arising solely from the December 1 incident, with Lt. Sullivan and

Officer Pucci as defendants; and (2) a state law claim based upon all four of the incidents detailed in the complaint.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

January 24, 2008

cc:  Michael J. Sheehan, Esq.
     Elizabeth L. Hurley, Esq.
     John A. Curran, Esq.